## Heck v. Commonwealth.

(Decided March 12, 1915.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Trial—Jury Must Be Kept Together.—While Section 244, of the Criminal Code provides, that in the trial of offenses, which are, or may be punished capitally, after jurors are accepted, they must not be allowed to separate, but must be kept together, in charge of an officer, the right to object to the jurors being allowed to separate, is a right which the accused may waive.

2. Criminal Law—Trial—Separation of Jury.—When, in a capital case, the jurors are allowed to separate in the presence of the accused, and he makes no objection thereto, it will be considered that he has waived his right to object to their separation, and will not thereafter be heard to complain of their separation.

3. Appeal and Error—Trial—Separation of Jury.—In a capital case, if the jurors are allowed to separate, and the accused does not object thereto, at the time, and does not in his grounds for a new trial present same to the court, his objection cannot be considered upon appeal.

4. Criminal Law—Change of Venue.—The right to a change of venue in a criminal case is one given by the statute, and the Legislature has authority to provide for the extent and manner of its exercise.

5. Criminal Law—Trial—Change of Venue.—The judge of the trial court, in passing upon a motion for a change of venue, by the accused, in a criminal trial, has a sound discretion, and should grant the change of venue, if it appears that the accused cannot

have a fair trial in the county where the prosecution is pending.

6. Appeal and Error—Motion for Change of Venue—Discretion of Trial Court.—The Court of Appeals will not reverse the judgment of the judge of the trial court, upon a motion for a change of venue, in a criminal case, except in instances where the appellate court is satisfied that the trial court has abused its discretion in its decision upon the motion.

7. Homicide—Instructions.—Some of the facts which go to make out a defense to a homicide should not be singled out and given prominence in a self-defense instruction, any more than it should be done in any other instruction, but the question of self-defense should be left to the jury on all the facts, under the usual instructions.

8. Homicide—Province of Jury.—In the trial of one accused of homicide, the jury ought, as far as possible, to judge of the facts which surround the homicide from the standpoint of the accused.

9. Homicide—Instructions.—An instruction which predicates the right of one accused of a homicide to have a belief, that he was in danger, upon some facts singled out and made prominent in the instruction, or which directs the jury to determine whether the means used by the accused were necessary for his protection, instead of submitting the question as to whether or not, under the circumstances, the means used for protection appeared necessary to the accused in the exercise of a reasonable judgment, is prejudicial to the substantial rights of the accused.

LOUIS I. IGLEHEART for appellant.

JAMES GARNETT, Attorney General, and ROBERT T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Charles Heck, was indicted in the Daviess Circuit Court, charged with the willful murder of one George Hester, and upon his trial he was found guilty of murder by the jury, and the penalty fixed at imprisonment for life, and the court, thereupon, entered a judgment accordingly.

The grounds and motion of appellant for a new trial being overruled, he has appealed to this court, and seeks a reversal of the judgment of conviction against him for the following reasons: First: Because the court erred in refusing to grant him a change of venue from the county of Daviess for the trial of his case to some other county. Second: Because the court erred in permitting five of the jurors, after they had been qualified and accepted, to separate, and go without being in charge of

an officer until the next day; and third: Because the court erred in instructing the jury, and in failing to instruct the jury upon the entire law of the case.

The statute which governs the proceedings in a criminal case, relative to a change of venue, provides, that upon an application made by a defendant for a change of venue, the court will hear all witnesses that may be produced by either party, and from the evidence determine whether or not the applicant is entitled to a change of venue. It provides that one indicted for a crime may have a change of venue, if it appears that he cannot have a fair trial in the county where the prosecution is pending. The right to a change of venue is only bestowed by the statute, and the legislature has authority to provide for the extent and manner of its exercise. In the case at bar, evidence was heard upon the motion, and we presume all was heard that either party desired to offer. The judge of the trial court, in deciding upon such a motion, has a sound discretion, and has better opportunity of properly estimating the conditions which exist in the community, where he is then engaged in holding court, a better acquaintance with the witnesses, and is able to know better what weight to give their evidence, than we can possibly know. It has, therefore, been held, that while this court has authority to revise, and if need be, reverse the judgment of the trial judge, on a motion for a change of venue, it is not done, nor either ought it be done, except in instances where this court is satisfied that the trial court has abused its discretion in its decision upon the motion. Howard v. Com'th., 15 R., 874; Crockett v. Com'th., 100 Ky., 382.

Considering the evidence heard upon the motion by the trial court, we are not able to say that its discretion in the matter was abused in refusing the application.

As to the complaint, that after the jury had been accepted, it was permitted to separate, and not kept together in charge of an officer, it appears that the court proceeded to empanel the jury on the first day of the trial, but did not have time in which to complete the empanelling of the jury upon that day, but that five jurors were accepted by both sides, and when the court adjourned for the day, until the next day, the five jurors were not kept together in charge of an officer, but were permitted to separate and go to their homes. On the next day the jury was completed, and the five jurors, who were

accepted on the day before, composed a portion of the panel. Section 244 of the Criminal Code, provides, that on the trial of offenses which are or may be punished capitally, after jurors are accepted, they shall not be perimtted to separate, but shall be kept together in charge of the proper officer. It appears, however, that the defendant did not make any objection at the time to permitting the five jurors accepted, to separate and go, without being in custody of an officer, neither did he after that time during the trial make any objection upon such subject, neither did he present the matter to the trial court in his grounds or motion for a new trial. It has been held by this court that the accused may waive his right to object to permitting the jurors to separate, and it has, further, been held, that an objection made to the separation of the jury for the first time in a motion for a new trial, will not be considered. The objection should have been made at the time. Wilkerson v. Com'th., 88 Ky., 29; Vinegar v. Com., 104 Ky., 106; Wade v. Com'th., 106 Ky., 321. The separation complained of having taken place in the presence of the appellant, and without objection from him, he could not, thereafter, complain of it, and not having presented it at any time to the court, it is presumed, that he waived his right of objection on that account.

The appellant complains of the instruction defining the crime of voluntary manslaughter, and also the instruction given by the court upon the right of the appellant to defend himself. The complaint of the instruction defining the crime of voluntary manslaughter is, that under that instruction, the jury would necessarily believe that the crime of manslaughter could not be committed, unless the killing was not in the appellant's actual self-defense, and would or probably did conclude that if the appellant committed the offense in his apparently necessary self-defense, only, that he was guilty of a greater and more heinous offense, when it should have defined the crime, as being a homicide committed in a sudden heat and passion, or in a sudden affray, without previous malice, and not in his necessary self-defense, or apparently necessary self-defense. This error would not be prejudicial to the accused, if it was cured by an instruction defining his rights of self-defense, and authorizing him to act in his apparently necessary self-defense. As the judgment appealed from will have to

be reversed for reasons hereafter stated, on another trial, the court should insert in the instruction given upon the subject of manslaughter, where it says, "not in his self-defense," in place of those words, the words, "not in his necessary, or apparently necessary, self-defense."

The instruction defining the right of self-defense of appellant, given by the court below, is as follows:

"If you shall believe from the evidence that at the time the defendant, Charles Heck, struck and killed George Hester, if he did so, the said Charles Heck, the defendant, was being assaulted or menaced by the said George Hester, or his life had been previously threatened, and the defendant believed, and had reasonable grounds to believe from the nature of the assault or the menace or threat, if any, and under the circumstances and surroundings, that he was then and there in danger of suffering great bodily harm or death at the hands of the said George Hester, and there appeared to the defendant, Charles Heck, exercising a reasonable judgment at the time and under the circumstances, no safe, or apparently safe way, of avoiding the then threatened or pending danger, and he struck the said George Hester under these circumstances and surroundings, then in that event you should find him not guilty, on the ground that the striking was done in his necessary self-defense. But if the jury shall believe from the evidence that the deceased, George Hester, first assaulted the defendant, Heck, then the defendant, Heck, was authorized to use only such force as was necessary or apparently necessary to protect himself, and if he used more force than was necessary, or apparently necessary, for this purpose, and so killed the deceased, Hester, he cannot be acquitted on the ground of self-defense." This instruction appears to be highly prejudicial to the substantial rights of the appellant. However brutal may be the conduct of an accused person, so far as it is a violation of the laws pertaining to such matters, he is entitled to have his case submitted to a jury under instructions which define his legal rights correctly. This instruction predicates his right to believe himself in danger, or to have reasonable grounds for such belief, upon the fact that the jury must believe, before he could entertain such beliefs, that he was then being assaulted or menaced by the deceased, or that the deceased had previously threat-

ened his life and precludes him from acting upon what the circumstances surrounding him would reasonably indicate to him. Some of the facts which go to make out a defense to a homicide, should not be singled out and given prominence in a self-defense instruction, any more than it should be done in any other instruction. To do so, is in nearly every case, prejudicial to the accused. It is always competent to prove, as a matter of defense for one accused of homicide, previous threats, or lying in wait, or attempted violence by the deceased, but the question of self-defense should be left to the jury on all the facts, under the usual instructions. Hobson, Blaine & Caldwell on Instructions; Ware v. Com'th., 140 Ky., 534; Reynolds v. Com'th., 114 Ky., 912; Connor v. Com'th., 118 Ky., 497. The portion, of the instruction complained of, which after setting out the appellant's rights to defend himself, then undertakes to qualify it, is subject to the same objection as above mentioned, and, also, to the further objection, that the jury could determine from it that the necessary, or apparently necessary force, which he was authorized to exercise to protect himself, was not such as seemed and appeared to him in the exercise of a reasonable judgment to be necessary, but such as was necessary, or appeared to be necessary in the opinion of the jury at the time of the trial. In the case of Amos v. Com'th., 16 R., 254, the court in discussing an instruction, which had the fault of the instruction in this case, used the following language: "The above quoted instruction is not, in our opinion, so written as to make such distinction clear, and the jury might, and probably did, interpret it to authorize and require it to determine whether the means used by the defendant were actually necessary to protect himself. A proper understanding and true import and meaning of such instruction is especially important in this case for appellant."

It has been so often held by this court, and said by the text writers, that in the trial of one accused of homicide, that the jury ought as far as possible, to judge of the facts which surround the homicide, from the standpoint of the defendant that the doctrine is elementary. An instruction defining the law of self-defense should make it clear, that the means which can be used by the accused to protect himself, are such as appeared at that time to him necessary for that purpose, in the exercise of a rea-

sonable judgment by him.' Such has been so universally held, that we do not deem it necessary to cite authorities to support it.

Upon another trial the court should give in place of instruction number four complained of, an instruction substantially as follows: "If the jury believe from the evidence, that at the time the defendant struck and killed the deceased with a club, if he did so, he (the defendant), then believed and had reasonable grounds for believing, that he was then and there in danger of death, or great bodily harm, at the hands of the deceased, and had no other safe, or to him apparently safe means of avoiding the danger, real, or to him apparent, except to strike the deceased with the club, and in so doing, used no more force than was necessary, or in the exercise of a reasonable judgment, appeared to him, at the time, to be necessary to protect himself from the danger at the hands of the deceased, real or to him apparent, the law is for the defendant, and the jury should find him not guilty."

The court should, also, upon another trial, in defining the word "malice," as it did in instruction number six, define its meaning as applying to all of the instructions, as well as its meaning in the indictment and the first instruction.

For the error in giving the fourth instruction, the judgment appealed from is reversed, and the case is remanded to the court below, with directions to proceed in conformity with this opinion.