## Arnold v. Commonwealth.

(Decided April 14, 1922.)

## Appeal from McCracken Circuit Court.

1. Indictment and Information—Requisites and Sufficiency of Accusation.—If an indictment contains a statement of facts which constitute the offense in language of such clearness and certainty, that a person of ordinary understanding will know from it what is intended and the court will be able to pronounce judgment according to the right of the case, it will be sufficient to sustain a prosecution.

2. Criminal Law—Separation of Jury—Appeal and Error.—If the members of a jury, trying a capital case are permitted by the court to separate, it is the duty of the accused, if done in his presence, to object thereto, but, if he fails to object thereto and fails to embrace the error in his grounds for a new trial, it can not be considered upon appeal.

3. Criminal Law—Continuance—Appeal and Error—New Trial.—An error of the court in overruling a motion for a continuance, but, which is not relied upon in a motion for a new trial, cannot be considered upon appeal.

4. Criminal Law—Argument and Conduct of Counsel—New Trial.—Improper argument by the Commonwealth's attorney must be objected to by the defendant, at the time, and if not, it is too late to rely upon it in the motion for a new trial.

5. Criminal Law—Appeal and Error—Instructions.—In a criminal action, the Court of Appeals will not consider upon appeal any error made during the trial, that is complained of for the first time in the motion for a new trial, except errors in the giving and failing to give instructions.

6. Criminal Law—New Trial.—In a criminal trial it is necessary to set out in the grounds for a new trial all the errors made during the trial upon which a party intends to rely upon appeal, except errors in the admission and rejection of evidence, which will be considered if shown upon the bill of exceptions, with objections and exceptions.

7. Criminal Law—Mental Unsoundness as Excuse for Crime.—The unsoundness of mind which will excuse one for a crime, is such mental unsoundness, that at the time of the commission of the crime the party was without sufficient reason to know what he was doing, or had not sufficient reason to know right from wrong, or as a result of mental unsoundness he had not then sufficient will power to govern his actions, by reason of an insane impulse which he could not resist or control.

8. Criminal Law—Drunkenness.—A lack of sufficient reason to know what he is doing, or a lack of sufficient will power to control his actions, which is caused alone by voluntary drunkenness will not excuse a crime.

W. E. GILBERT for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Affirming.

The appellant, Robert L. Arnold, a young man of twenty-eight years of age, from whom his wife had separated herself about one month theretofore, and Minta Allen, a married woman of very attractive personality and dissolute habits and who had theretofore abandoned her husband and three small children, formed a friendship at Fulton, and went from there to Paducah, where for several months, they held themselves out as husband and wife, when the appellant in an apparently drunken and jealous rage, killed the woman. He was charged, by indictment with the crime of murder, and when tried upon the indictment was found guilty and sentenced to life imprisonment, and for the purpose of securing a reversal of the judgment, has appealed.

The appellant deposes that he had determined to go to Memphis, Tennessee, and that he had advised his vic-

tim to return to her husband and children and while there is no one to gainsay the truth of the statement, the after actions and conduct of the parties are more consistent with the theory that he suspected that she contemplated quitting him, and that such was the chief moving cause of his conduct. In the afternoon, after causing their luggage to be removed to the railroad depot, they proceeded there themselves and near thereto he struck and knocked her to the ground, twice, causing a bruised place upon her face, which remained after her death. A man ran to the assistance of the woman, loudly warning the appellant to cease to beat her, when he, after tearing her hat to pieces, ran away. Shortly after, he, having secured the services of a taxicab, returned to the depot and called to her to come and get into the carriage, and when she approached, was heard to say to him, ''I want my money.'' She got into the carriage and they were driven to the house of Mrs. Boren, where they had boarded and lodged for three months last passed, and from where they had departed for the depot earlier in the afternoon. They remained at Mrs. Boren's until about six and one-half o'clock, and during that time, he was heard to be cursing and abusing the woman from time to time, and he said to Mrs. Boren, that if it was not in her house, he would shoot and kill the woman, at once; that she was not what Mrs. Boren thought she was. The woman desired water, but he refused to allow her to go for it, and when she desired to go to the toilet, he declared, that she should not do so. After a time, she was permitted to descend the stairway to the lower floor, but, he followed, and thrust her back from the front porch into the house. Mrs. Boren's son persuaded appellant to go to the room, he had occupied, and put away a pistol, which he had. The young man deposed that there was a smell of liquor upon appellant's breath, who appeared to be very mad, and that appellant told him, that he had taken whiskey out in the city, but, that he would not have done so, if the woman had not said, what she had. The woman went upon a small porch, at the back of the house, and the appellant having gone up into the second story of the house, returned and went upon the outside of the house and around where the woman was, where a short conversation between them was heard, but, what they said could not be understood. He then presented a pistol at her, when she, evidently turning to escape into the house, was shot in the back and the effect of the shot was her in-

stant death. The pistol was discharged four or five times, and shortly thereafter, he was found lying in a nearby lot, apparently dead, from the effect of a gunshot wound, which penetrated his body from the front. This wound was presumably self inflicted. How many of the shots he directed at the woman and how many at himself is conjectural. Another of the shots took effect upon him, but, the evidence fails to disclose at what point on his person. He was removed to a hospital and in due course of time recovered.

It is urged that the trial court erred to his prejudice, when it overruled a general demurrer to the indictment. The defect in the indictment, upon which the demurrer is rested, is, that in the description of the manner in which the crime was committed, it charges, that the accused "did feloniously, wilfully and with malice aforethought kill, slay and murder Minta Miller, with a pistol loaded with powder, leaden ball or other hard substance, from which shooting and wounding the said Minta Miller did then and there immediately die." It is insisted that it does not charge the accused with shooting the deceased with the pistol and the accused was not therefore apprised by the indictment of the acts constituting the crime, as it could be inferred that the killing resulted by the use of the pistol, in a way other than by shooting with it. It is true the indictment does not directly allege that the act constituting the crime was shooting and thereby killing the woman, with the pistol, but, it inferentially does so, with sufficient clearness, that no one of ordinary intelligence could fail to understand it, and the allegation that "from such shooting and wounding" the victim, died, precludes any inference, that the act constituting the crime was other use of the pistol than by shooting with it. One of the four essentials of a valid indictment is, that it shall "contain a statement of the acts, constituting the offense, in ordinary and concise language and such as will enable a person of common understanding to know what is intended and such degree of certainty as to enable the court to pronounce judgment on conviction according to the right of the case." Overstreet v. Commonwealth, 147 Ky. 471; Blakey v. Commonwealth, 183 Ky. 497; Rutland v. Commonwealth, 160 Ky. 77; Drury v. Commonwealth, 162 Ky. 123. The indictment, although exhibiting a certain degree of inadvertence, in its drawing, fully complies with the above essential requirement, and the affidavits for continuance

show that the accused was not in any manner misled, as to the manner in which he is accused of slaying the woman.

The appellant urges, that after the jury was accepted and sworn, the members of it were permitted to separate from each other and mingle with other persons and that this was prejudicial error. No proof of this contention was offered, and the only ground upon which it is asserted, is an order of the court, which is relied upon as showing that the jury was permitted to separate. This order, though inaptly drawn, is not susceptible of the meaning, which appellant attributes to it, and if the members of the jury were in fact permitted to separate the appellant made no objection to it, at the time, and failed to embrace it in his grounds for a new trial. Such an objection appearing for the first time upon appeal cannot be considered. Wilkerson v. Commonwealth, 88 Ky. 29; Heck v. Commonwealth, 163 Ky. 520. Under such circumstances the right that jurymen be kept together, during the trial, being a statutory instead of a constitutional right, must be considered to have been waived.

The complaint now made that the court erred in overruling the appellant's motion for a continuance can not now be considered, as he did not rely upon such error, if any was made, in that respect, in his motion and grounds for a new trial. Frey v. Commonwealth, 169 Ky. 528; Hendrickson v. Commonwealth, 146 Ky. 742.

The claim of appellant, that the jury was not sworn is satisfactorily disproved.

It is urged that the Commonwealth's attorney indulged in improper language in his argument to the jury, and this alleged prejudicial circumstance was relied upon in the grounds for a new trial, but no objection was made to the argument and language at the time, and the complaint comes too late, when for the first time it appears in a motion for a new trial. A party cannot sit by and make no objection to an improper argument, against him; take his chances with the jury, and thus deprive the court of the opportunity to correct the wrong, if any is done, and then take advantage of it after verdict, if the verdict is against him.

As applying to such grounds for reversal, viz.: the permitting of a separation of the members of the jury, when permitted in the presence or with knowledge of the accused; failure to swear the jury; error in denying a

continuance, and improper argument of the Common-
wealth's attorney, the following general principles are
adhered to: As a general rule in a criminal action, the
court will not consider, upon appeal, any error, made
during the trial, that appears for the first time in a mo-
tion for a new trial. Errors in the giving or failure to
give instructions are exceptions to the above general rule,
because, it has been held, that in a criminal action, it is
the duty of the court without request to instruct the jury
concerning the entire law of the case. It is also a gen-
eral rule, that it is necessary to set out in the grounds for
a new trial all the errors made during the trial upon
which a party intends to rely, upon appeal, otherwise
they can not be considered. An exception to the latter
rule are errors made in rulings upon the admission and
rejection of evidence, but, such rulings must be objected
to at the time and exceptions saved, and the errors made
and objections and exceptions saved must appear in a bill
of exceptions. Hendrickson v. Commonwealth, 146 Ky.
742; Vinegar v. Commonwealth, 104 Ky. 106; Howard v.
Commonwealth, 114 Ky. 372; Smith v. Commonwealth,
119 Ky. 280; Thompson v. Commonwealth, 122 Ky. 501;
section 274 Civil Code; Turnbull v. Commonwealth, 79
Ky. 459; Johnson v. Commonwealth, 9 Bush 224; Buckles
v. Commonwealth, 113 Ky. 795.

The only defense relied on by the accused was that at
the time, he shot and killed his paramour, he was insane,
and it is insisted, that the evidence of such condition was
so preponderant, that the verdict was palpably against
the evidence. Without quoting the evidence at length,
it is sufficient to say that a number of witnesses were of-
fered who gave testimony to the effect, that they had
been acquainted and associated with appellant for dif-
ferent periods of time, and that in their opinion the ac-
cused was at times of unsound mind. When required to
state the facts and circumstances upon which their opin-
ions were based, they were chiefly of a very frivolous
character. One or more of them thought, at times, that
he would indulge, in their opinion, in unnecessary laugh-
ing; or that he appeared upon occasions to indulge in
thinking upon some subject to the extent that he ap-
peared to be absent-minded; and another thought he was
insane upon occasions, because he once or twice quit his
work and was absent for a short space of time, and that
he had been seen to seize a broom and engage in sweep-
ing his place of work, when presumably it was not his

duty to do so. Another described actions upon the part of the accused, which indicated an ungovernable temper, rather than mental unsoundness. On the evening that he killed the woman and was carried in an unconscious and wounded condition to the hospital, the attending physician, as well as several policemen who saw him, were of the opinion that he did not for several hours thereafter know the nature of his acts. The physician, however, deposed that the wounds, which he had inflicted upon himself were sufficient to produce such a result, and it is significant that thereafter no one considered him to be insane. Certain of the policemen were of the opinion that upon that evening he was drunk or crazy. This is the occasion upon which, he made inquiry, whether the woman was dead, and when the person inquired of hesitated to answer, he bade him tell him, that it would not bother him, or would not make any difference. He, also, said, that he wished that he would die, also. The accused deposed that upon the afternoon of the homicide and before going to the depot, that the woman gave him, what he thought was a drink of whiskey, and that thereafter he knew nothing and that his memory was an utter blank, as to all transactions upon that day. Upon the other hand, one witness who saw him at the hospital on the evening of the homicide, deposed that he was perfectly sane, another who saw him, two or three times each day for three months just preceding the homicide and frequently talked with him deposed that he was at all times sane, and that he had never observed any evidences of mental unsoundness in him. While at Mrs. Boren's on the afternoon before committing the homicide, his conduct was that of a drunken man, rather than an insane one, and he confessed to have taken whiskey out in the city, because of the unpleasing remarks made to him by the woman. No attempt was made at any time either before or since the homicide to examine or have him examined for lunacy. His employers had entrusted him with the duties of a foreman. There was no evidence that he had ever indulged in any habits which would tend to render him of unsound mind and whatever may be the principle applying to delirium tremens, there was no evidence of his being in that condition or ever having indulged in the use of alcoholic spirits to such an extent as to impair his mentality. Every one is presumed to be sane, and one who would escape the consequences of a crime must satisfactorily show, that he is of unsound mind. Upon the

whole, the opinion of witnesses as to the mental soundness and the inferences to be drawn from his actions and
conduct and conversation were of such contrariety,
that the question of mental unsoundness at the time of
the commission of the homicide was properly submitted
to the jury, and the evidence is sufficient to support a
verdict that he was mentally responsible for his act.

The complaint that the instructions were too prolix
or confusing is not meritorious. The instructions concerning the crimes of murder and manslaughter were in
the usual form, and those defining the words "wilfully,"
"feloniously" and "malice aforethought" were correctly given. The jury was also instructed that if it believed from the evidence that the accused was of unsound mind to acquit him. The instruction defining such
unsoundness of mind as would excuse the accused for the
commission of the homicide, was with certain verbal inaccuracies the same as has been approved a great
many times. It directed the jury that the law
presumed every man to be sane until the contrary is shown by the evidence, and that before
the accused could be excused upon the ground of
insanity, it must believe from the evidence that the accused was at the time of the killing, without sufficient
reason to know what he was doing, or had not sufficient
reason to know right from wrong, or that as a result of
mental unsoundness, he had not then sufficient will power
to govern his actions by reason of some insane impulse
which he could not resist or control. The principle of
this instruction has been approved by this court in Abbott v Commonwealth, 107 Ky. 624; Banks v. Commonwealth, 145 Ky. 800; Miracle v. Commonwealth, 148 Ky.
453.

Under the evidence the instructions were more favorable to the accused than he was entitled to, because,
much of the evidence tended to support the theory, that if
there existed in the accused at the time of the homicide,
any inability to know right from wrong or to govern his
actions or to control his impulses, the inability arose
alone from voluntary drunkenness then existing and not
from unsoundness of mind, and it would not have been
error for the court to have instructed the jury, that, if
his lack of reason to know right from wrong, or lack of
will power to govern his actions, arose alone from voluntary drunkenness, he should not be acquitted upon

the ground that he was insane.    Mathley v. Commonwealth, 120 Ky. 389; McCarty v. Commonwealth, 114 Ky. 620.

The judgment is therefore affirmed.