## Nelson v. Commonwealth.

(Decided May 1, 1936.)

WALTER N. FLIPPIN for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

Charlie Nelson having been indicted by the grand jury of Pulaski county for the offense of chicken stealing to the value of more than $2, he was upon trial convicted and his punishment fixed at two years in the penitentiary.

Appellant's motion and grounds for a new trial, wherein there was an assignment of some nine grounds of alleged errors committed, having been overruled, he has appealed and here urges and argues for reversal of the judgment the following grounds: (1) That the verdict is not sustained by sufficient evidence and is flagrantly against the evidence; (2) that the court erred in allowing the jury to separate without a guard, after the case had been submitted to it and before a verdict had been rendered; and (3) that the court erred in not granting appellant a new trial for newly discovered evidence.

Briefly considering these objections in the order urged, the first is, that the verdict is flagrantly against the evidence.

A brief review of the facts as disclosed by the record are that the accused was, at the time he is charged with having committed this offense of chicken stealing, living in Cincinnati, where he states his occupation and business was that of a poultry dealer; also, that at the time he is charged with committing this offense of chicken stealing, he was making a short visit to his father's home in Pulaski county, as was his frequent custom, when it was also his custom to buy poultry for its later sale in Cincinnati.

The evidence discloses that on the night of April 11, 1935, Mr. and Mrs. Sweeney had six hens and one rooster, worth about $1 each, stolen from their chicken house in Science Hill, Ky. They reported this loss to the county officials, with a description of the chickens, the next morning. Later in the day, they were found in the hen-house of William Nelson, appellant's father, and identified.

It is not contended by the accused that the identification of these chickens by the Sweeneys, as being those they claim were stolen from them, was not properly made, and it is shown that he at once, upon being

asked by the officers and the Sweeneys if he had any chickens at his father's home, answered, ''Yes,'' and went with them and without protest gave these chickens to the Sweeneys, when they identified seven of a much larger number of chickens accused then had in the coop as theirs, by reason of their having been marked with distinctive foot bands and having been sheared.

The accused states, however, that he bought both these seven stolen and a number of other chickens on the night before from a certain fellow he met on a certain road named Blevins, who had so given his name to him when he had, the day before, picked him up and given him a ride in his car as he was driving along the highway. He states that he at the time was carrying chickens in the car that be had bought from others, which Blevins noticed, and told him that he also had some chickens on hand which he would sell him, which accused stated he would buy, when they agreed that Blevins would deliver them to him that night at a given place on the road. The accused states he met Blevins at the point stated, as agreed, where he weighed the chickens delivered him, with the aid of a flashlight and a small pocket scale he carried, and paid Blevins therefor something over $17. Another witness also testifies that he saw defendant that night as he was receiving chickens along the roadside.

The fact that these chickens were those found by the officers and the Sweeneys in the henhouse of the accused's father on the morning following their theft constitutes practically all the evidence tending to show the defendant was guilty of stealing them.

Conceding, arguendo, that this fact alone, if unexplained, might sufficiently sustain the verdict of the jury, appellant contends that such fact alone, when, considered in the light of his explanation given of his possession of them, that he had bought these chickens from Blevins and had paid him for them and that it was his usual course of business to buy poultry during his visits with his father, was not sufficient to sustain, but was palpably against, the verdict.

The commonwealth contends that this is but another instance wherein is applicable the rule that it is the jury's sole province to pass upon the credibility

of the testimony and determine which of the witnesses it will believe, and that it had the right to utterly disregard this explanatory testimony of the defendant as to his previous and doubtful method of conducting his chicken traffic.

The jury rejected the accused's explanation of his admitted possession of these chickens and refused to accept as credible his statement that he had bought them the night before from a person whom he did not know, but who had arranged with him to meet him at 9 o'clock that night, in the dark, along the highway for the purpose of delivering these chickens to him.

Appellant's argument is that the mere fact of his admitted possession of these chickens that had been stolen was not in itself sufficient, when explained, to support the jury's verdict; that while such fact alone was some evidence, it was yet insufficient, when explained, to answer the appellant's contention that the jury's verdict resting solely thereon was flagrantly and palpably against the evidence.

As to this it would appear enough to say that appellant's explanation of his possession of the stolen property falls somewhat short of being a reasonable explanation. Poultry handlers, as a rule, excepting some of the colored gentry, who operate on special schedules favored by them, are not given to supply their stock in trade through the means of clandestine meetings with unknown parties delivering the poultry along the roadside during the night hours. Such an unusual method of doing business in itself smacks strongly of a stealthy, covert, and likely wrongful method of prosecuting a lawful business.

While we are inclined to view the commonwealth's evidence against the accused as sufficient to sustain the verdict, or that at most it is not palpably against the evidence, we do not deem it needful to here pass upon this question, in view of the conclusion we have reached on the second objection urged, as calling for a reversal of the judgment. By this contention, appellant insists that there was here shown that an improper separation of the jury, was permitted by the court, after submission of the case to them. As to this, the bill of exceptions shows that after the case

had been submitted to the jury for a verdict and after their deliberation for a brief time, the time for adjournment having arrived and there being no objection from either side, the jury was permitted to separate overnight.

A more informing account of the facts as to the court's permitting the jury's separation is given in the transcript of evidence, made a part of the bill of exceptions, which is as follows:

> "At the conclusion of all of the evidence offered by both sides, the instructions of the court and argument of counsel, the jury retired to their room to deliberate on their verdict. When the jury was called out for the night adjournment, the court admonished the jury that during the adjournment he was not going to keep them together under guard; that during the adjournment they would not discuss the case among themselves, or with anyone; the court then adjourned until 9 A. M. on the following morning.

As the jury was leaving the room, counsel for appellant at the time objected to the separation of the jury, stating that they wanted to "enter a formal objection to the jury being allowed to separate," to which the court replied, "They are already gone now. Why didn't you object before I adjourned court?" Again, upon the following morning, when the jury was starting to their room to deliberate, counsel for accused moved the court "to discharge this jury and continue this case, because the jury was not kept together and under guard during last night."

Appellant contends that this was improper separation and constitutes reversible error.

Section 244, Criminal Code of Practice, provides in part that

> "On the trial of other felonies [that is, non-capital cases] the jurors, before the case is submitted to them, may be permitted to separate, in the discretion of the court, but after the case is submitted they shall be kept together in charge of officers."

Construing this section, we have repeatedly held its meaning and effect to be in keeping with the gen-

eral rule as announced in 16 R. C. L. sec. 116, p. 305, which is as follows:

> "The general rule in civil as well as in criminal cases is that after the cause has been submitted and the jury have been charged, they must be kept together in custody of a sworn officer, and prevented from communicating with other persons, until they have agreed on their verdict. That they be kept entirely aloof and free from contact or communication with other parties than the bailiffs who have them in keeping during the trial is absolutely necessary if the case is to be tried by an impartial and unbiased jury. * * *"

Again in the following section 118 of the same authority is announced the further rule that "separation of a jury, in a criminal case, is ground for reversal, unless it was with the prisoner's consent * * *" and that, "with reference to separations of the jury occurring after the submission of a criminal case many of the authorities recognize the rule that a presumption of prejudice will arise from the fact of such separation, if it is not rebutted by the prosecution."

Accordingly was it held in the case of French v. Commonwealth, 100 Ky. 63, 37 S. W. 269, 18 Ky. Law Rep. 574, where there was a separation of the jury after a final submission of the case to it. On the morning following before a verdict was returned, motion was made to discharge the jury. Upon the ground that the separation was such an error as demanded reversal of the judgment, the cause was appealed. The court, in reversing the judgment in this case, said:

> "This safeguard of the ancient law, alike vitally important to the state and to the accused, must not be impaired or frittered away. Manifestly, the occasion here furnishes no cause for separation, within a fair construction of the law; and, if it did, it must yet in all cases of separation be shown clearly by the state that no opportunity has been offered for the exercise of improper influences on the juror."

A very thorough discussion of this subject of the separation of a jury in a criminal case appears in the

annotation of the case of McHenry v. United States, 51 App. D. C. 119, 276 F. 761, appearing in 34 A. L. R. 1109. At page 1149 of the annotation it is stated that the Kentucky law is based on the ground that the right to have the jury kept together is statutory and not constitutional, that the defendant's failure to object at the time to the improper dispersal of the jury amounts to waiver. In Arnold v. Commonwealth, 194 Ky. 421, 240 S. W. 87, 89, the court said:

"If the members of the jury were in fact permitted to separate, the appellant made no objection to it at the time and failed to embrace it in his grounds for a new trial. Such an objection, appearing for the first time upon appeal, cannot be considered. * * * Under such circumstances the right that jurymen be kept together during the trial, being a statutory instead of a constitutional right, must be considered to have been waived." See, also, Heck v. Commonwealth, 163 Ky. 518, 174 S. W. 19.

Here, however, from the citation supra taken from the bill of exceptions, it appears that objection was timely made to the court's permitting the jury to disperse after submission of the case to it, and in so doing, even though it was a noncapital case, it was a prejudicial violation of section 244 of the Criminal Code of Practice, requiring that in the trial of noncapital or other felonies, "the jurors before the case is submitted to them, may be permitted to separate, in the discretion of the court, but after the case is submitted they shall be kept together in charge of officers."

Inasmuch as this statutory right of the appellant to have the jury trying his case kept together, after its submission to them, was not observed or complied with, we are of the opinion that the rights of the accused were reversibly prejudiced. Therefore, for such reason, the judgment is reversed.