## Staunton.

### WILLIAMS v. COMMONWEALTH.

| 93 | 769 |
| 110 | 930 |

SEPTEMBER 24, 1896.

1. CRIMINAL PROCEDURE—*Presence of Prisoner—Presumption.*—If the record shows that a prisoner was present in court when a motion for a new trial was made, the presumption is that he remained until the court adjourned for the day, unless the contrary is made to appear either directly or by necessary implication. When once shown to have been present, it is not necessary to show that he was remanded to jail at the conclusion of the proceedings for the day, though it usually so appears.

2. NEW TRIAL—*Misconduct of Jury—Statements to Jury out of Court—Objections after Verdict.*—A motion for a new trial on the ground of the misconduct of the jury will not be granted where it appears that the misconduct consisted in hearing a statement of a witness out of court in the presence of the accused, but without objection on his part, and that, after the jury returned into court, the matter was called to the attention of the court, in the presence of the accused and his counsel, and an opportunity afforded them of cross-examining the witness, of which they refused to avail themselves, and no objection was made or exception taken till after the jury had rendered their verdict, and then for the first time on a motion for a new trial.

Petition for a writ of error to a judgment of the Corporation Court of the city of Norfolk, rendered July 30, 1896, whereby the petitioner was sentenced to be hanged.

*Refused.*

The opinion states the case.

*P. J. Morris* and *H. G. Miller*, for the Petitioner.

KEITH, P., delivered the opinion of the court.

This case is before us upon the petition of Charles Williams for a writ of error to the judgment of the Corporation Court of the city of Norfolk rendered on the 23d day of June, 1896, by which he was sentenced to be hanged for the murder of one George Bess. The petition presents two assignments of error:

First. It is alleged that the record fails to show that, when the prisoner renewed his motion to set aside the verdict of the jury and grant him a new trial, he was personally present, in that it fails to recite that the petitioner was remanded to jail at the conclusion of the proceedings on said motion.

The order recites that "Charles Williams, who stands convicted of murder in the first degree, was this day again led to the bar in the custody of the jailer of this court, and thereupon renewed his motion to set aside the verdict of the jury and grant him a new trial, on the ground that the said verdict was contrary to the law and the evidence, and on the further ground of the misconduct of the jury on the trial; and, the said motion being argued, the court takes time to consider."

The precise error assigned is that the record for that day does not conclude with the statement "and the prisoner was remanded to jail," from which it is sought to be inferred that he was not personally present in court during the whole of the proceedings which affected him. The words, "the prisoner is remanded to jail," are without doubt usual, and have been relied upon by the court to supply proof in the absence of other more specific averments of the presence of the prisoner during his trial, but we know of no case in which their omission from the record has received the construction contended for here. The record for the first day of July shows that the prisoner "was this day again led to the bar in the custody of the jailer of this court, and thereupon re-

newed his motion to set aside the verdict of the jury and grant him a new trial." No action was taken upon that motion, but the decision of the court was reserved. It therefore does affirmatively appear, in the most formal manner, that the prisoner was present when the only step was taken by the court which could by possibility affect his interest; but, apart from all this, the record having recited that he was present in court, the presumption would be that he remained until the court adjourned for the day, unless the contrary is made to appear either directly or by necessary intendment.

The second assignment of error is based upon the following state of facts:

During the progress of the trial the jury was taken to the scene of the alleged homicide, at the request of the attorney for the Commonwealth. While visiting the locality the jury was placed in charge of Alphonzo Mercer, a deputy for John E. Burks, sergeant for the city of Norfolk, to whom was administered the following oath: "You shall well and truly, to the best of your ability, keep this jury together, and neither speak to them yourself, nor suffer any other person to speak to them touching any matter relative to this trial until you bring them again into court, so help you God." The jury thereupon retired in charge of the said deputy, the prisoner going with them, and after some time were again brought into court, and the evidence fully heard.

It appears that the jury was accompanied by the attorney for the Commonwealth, and that the counsel for the prisoner were invited to be present, but declined. After the jury reached the scene of the homicide, one of the jurors asked the attorney for the Commonwealth to have the location of the spots of blood that had been testified to pointed out on the deck of the ship where the killing was alleged to have taken place. Thereupon the attorney for the Commonwealth called upon Mr. Linthicum, who pointed out where the spots

of blood were alleged to have been, and explained how the blood had run around the ship, and that the reason the jury could not then see it was, that the deck of the ship had been painted since the occurrence of the alleged homicide. It appears that the fact that the ship had been painted had not been testified to by any witness during the trial. It appears that the sergeant in charge instructed the jury not to communicate with any one, but that the attorney for the Commonwealth stated that Mr. Linthicum might make an explanation, and thereupon the sergeant made no further objection.

It further appears that, upon the return of the jury, the prisoner, and the Commonwealth's attorney into court, the attorney for the Commonwealth informed the court what had taken place, and said that the witness Linthicum was present, if the counsel for the prisoner wished to ask him any question, but neither the prisoner nor his counsel raised any objection, or asked any question.

These are the facts as appears from the affidavits of the prisoner as to what occurred upon the boat, and from the affidavits of Mercer and White, the deputy sergeants, as to what occurred not only upon the boat, but in the court after the return of the jury. The counsel for prisoner admit in their affidavit the foregoing facts, except that they both say that, while they were informed that the Commonwealth's attorney accompanied the jury to the scene of the killing, and had requested Linthicum to point out the premises, they were not aware that anything more had been said by Linthicum, and especially that they were not aware that any statement had been made to the jury by Linthicum in respect to the painting of the boat.

All the facts occurred in the presence of, and were known to, the prisoner. The affirmative evidence is that the whole transaction was brought to the attention of the court in the presence of the jury, of the prisoner, and of his counsel. No

exception was filed at the time to what had been done, nor any objection noted to any part of the proceedings. So far from it, the fact that the jury had been taken to view the premises was not stated in the record until after the verdict had been rendered, when the court was requested to spread it upon the record, in order that it might be made the ground of a motion for a new trial.

It further appears that Linthicum was offered for examination as to what had taken place out of court, but this privilege or right was not availed of by the prisoner nor his counsel, though the fact that the witness was offered for cross-examination is nowhere contradicted.

In 1st Bishop's New Crim. Law, sec. 997, subdivision 4, it is said: " A defendant who does not object to illegal evidence, but permits it to go to the jury, can claim nothing afterwards on the ground of its admission."

In the facts as they appear we see no ground for the imputation of misconduct to the jury, nor indeed to any party concerned. It was at the utmost an inadvertence—a mistake which might have been corrected if the court's attention had been called to it in time, which was known to the prisoner and which indeed occurred in his presence, and while we do not doubt the truth of what is contained in the affidavits of the prisoner's counsel, the facts were as accessible to them before as after the rendition of the verdict. Of what occurred, the most that can be predicated is that the evidence was irregularly placed before the jury.

In *Peery's Adm'r* v. *Peery* 26 Gratt. 324, it is said: "Notice must be given at the time of the ruling of the court, or at least before the verdict, that the point will be saved, though the bill of exceptions may be drawn up and signed at any time during the term." See also *Whalen* v. *Com.*, 90 Va. at page 549; *Trumbo's Adm'r* v. *Street Car Co.*, 89 Va. 780; while in *Grayson's Case*, 6 Gratt. at page 723, it is said: " Motions for new trials are governed by the same rules in criminal as in civil cases."

The authorities above cited, and the practice thereby approved, applies to the admission of illegal and improper testimony. In the case before us the testimony objected to was entirely pertinent and proper, the objection being merely to the irregularity of its introduction. To this case, therefore, the law as above stated, applies with still greater force and propriety. If the prisoner, after the verdict has been rendered, cannot for the first time object to the introduction of illegal testimony, how can it be contended that he can for the first time after the verdict object to legal testimony irregularly introduced?

The prisoner in a criminal case will not be allowed, any more than a party in a civil case, to sit mute in the presence of the court, with the knowledge that some mere irregularity has taken place during the trial, ready to take advantage of it in case of an adverse verdict. Having knowledge of such irregularity, it is his duty to bring it to the attention of the court, which may correct it, or in some way obviate its effects; but neither a party to a civil case, nor the prisoner in a criminal case, will be permitted to play fast and loose with the court.

The petition for a writ of error is refused.

*Writ of error refused.*