# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## ROGER OWENS V. COMMONWEALTH.

January 12, 1933.

Present, All the Justices.

The opinion states the case.

*Warren L. Tiller, Jos. F. Hall* and *Leith S. Bremner,* for the plaintiff in error.

John R. Saunders, Attorney-General, and Edwin H. Gibson and Collins Denny, Jr., Assistant Attorneys-General, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused, Roger Owens, was tried by a jury upon an indictment charging him with the crime of attempted rape. His punishment was fixed at confinement in the penitentiary for a period of five years, and judgment was accordingly pronounced by the court. Ten days thereafter the accused submitted a motion in writing, seeking to have the verdict set aside on the sole ground that during the progress of the trial the sheriff permitted the jury to separate, in derogation of the provisions of section 4902 of the Code, which reads in part as follows:

"In any case of a felony where the punishment cannot be death, the jury cannot be kept together unless the court otherwise directs. * * *."

Section 4767 of the Code provides that "attempts to commit rape shall be punishable with death, or in the discretion of the jury, or of the court trying the case without a jury, by confinement in the penitentiary for life or for any term not less than three years; * * *."

The record fails to affirmatively show that the death penalty was not invoked by the attorney for the Commonwealth, and therefore a decision of the case rests upon the provisions of section 4902 of the Code.

In support of the motion to set aside the verdict, Arthur Brown, the offending juror, was called by the accused and testified "That he was one of the jurors that tried the case; that he was a little deaf; that he did not hear the court tell the sheriff that the jury must be kept together; that when the court adjourned for the lunch hour and the jury left the courthouse in charge of the sheriff, he left the other members of the jury at the courthouse door and went across the court green to the toilet; that he then walked

out to the entrance of the court green, opposite the hotel, and was standing at the gate when the sheriff appeared on the hotel porch and called him to join the rest of the jury; that he then walked across the road to the hotel to the sheriff and went into the dining room with him where he sat down with the remaining eleven jurors and the sheriff and had his dinner; that the total time that he was absent from the other jurors did not exceed ten minutes at the outside; that during that period of absence he was not in the company of any other person, did not talk with anyone and no one had anything to say to him about the case or have any conversation with him at all."

It further appears from the testimony of Woolfolk, a deputy sheriff, that he saw Brown standing outside the court green; that he saw three other people standing at a distance of approximately ten feet from Brown; that these people were not engaged in conversation with Brown and he did not see Brown in conversation with anyone; that the Owens case was the only case tried that day; that there was not a large crowd present at the trial; that the accused resided in Williamsburg; that the prosecutrix resided in Richmond and both were strangers in Hanover county; that, from observation, no particular interest was manifested in the trial.

Counsel for the accused contend that under section 4902 of the Code, it was necessary that the jury be strictly kept together, and the mere separation of the jury *per se* vitiates the verdict rendered, and to sustain the contention rely upon *McCaul's Case,* 1 Va. Cas. (3 Va.) 271; *Overbee's Case,* 1 Rob. (40 Va.) 756; *Wormley's Case,* 8 Gratt. (49 Va.) 712, 56 Am. Dec. 162; and *Trim's Case,* 18 Gratt. (59 Va.) 983, 98 Am. Dec. 765.

From the affidavits set forth in the opinion of the court in *McCaul's Case,* it appears that one juror, on the way from the courthouse to the jury room, stated that he was going home to get his dinner. Over the protest of the sheriff, into whose custody the jury had been committed,

the juror separated from the other eleven jurors and was absent some fifteen or twenty minutes. During that period the juror, as appears from his affidavit, had conversations with several people who asked him if the case had been determined. On that state of facts, the appellate court very properly held that such a separation vitiated the verdict.

In *Overbee's Case,* it appears that a juror, without the knowledge of the court, left the jury box and passed out of the courthouse, through a crowd of persons collected about the door, and remained absent a few minutes, without, according to his testimony, having had communication with anyone. Whether or not the juror heard the case discussed as he mingled with the spectators is not disclosed by the report of the case. The appellate court, without handing down an opinion, set aside the verdict and remanded the case for a new trial.

In *Wormley's Case,* it appears that the jury panel was completed on Saturday, the witnesses for the Commonwealth and the accused were sworn; but before any evidence was given in the court adjourned. On Sunday evening, at the invitation of Mr. Cheatam, the clerk of the court, the deputy sheriff, in whose charge the jury had been committed, took the jury to visit the clerk who resided about a half a mile from the courthouse. Upon arrival at the house of the clerk, the deputy sheriff and the jury went into the parlor where they found the clerk, his son-in-law and a Mr. Winfree, who was employed in guarding the jail. Shortly after getting to Cheatam's, the deputy went out of the parlor and into another room between which and the parlor there was no connecting door, and while in this room the jury were out of his sight. While the deputy was absent for a period of five or ten minutes, liquor was served to the jury by the son-in-law. The deputy more than once left the jury in the same way, under the same conditions. Not once did he admonish the jury or the other persons present to abstain from any conversation upon the subject

of the trial. The visit lasted for an hour, the time being passed in general conversation and without (as testified) any allusion to the approaching trial. In awarding a new trial, the court, in a brief opinion, without reference to the prior decisions, stated:

"The court is of opinion * * * that the conduct of the sheriff, in withdrawing from the jury at the house of Mr. Cheatam, and leaving them in the parlor in company with the three other gentlemen, as is set forth in the record, was sufficient to vitiate the verdict of the jury; and that upon *that* ground a new trial should be awarded to the prisoner.

"The court deems it proper to add, that the conduct of the sheriff in conducting the jury to the house of Mr. Cheatam and withdrawing from them under the circumstances disclosed by the evidence, was such misbehavior on the part of that officer as to deserve the animadversion and censure of the court. The act should be condemned, because its tendency is to impair the purity of the trial by jury in criminal cases."

*Trim's Case* sheds no light upon the question. There the sheriff had been sworn to keep the jury together, and he took part of the jury out of the jury room, leaving the others with a deputy sheriff who had not been sworn. The jurors who were left with the deputy sheriff stayed in the room with him and the doors were closed. The court held that the verdict was not vitiated.

In *Philips' Case*, 19 Gratt. (60 Va.) 485, decided in 1868, Judge Rives fully discusses the first three of the above cases relied upon, and with the concurrence of Judges Moncure and Joynes comes to this conclusion:

"If it be conceded to the counsel for plaintiff in error that *McCaul's Case*, 1 Va. Cas. [3 Va.] 271, and *Overbee's Case*, 1 Rob. [40 Va.] 756, are authority for their position that separation *per se* vitiates a verdict in a criminal cause, it must be allowed that *Martin's Case*, 2 Leigh [29 Va.] 745; *McCarter's Case*, 11 Leigh [38 Va.] 633, and *Thompson's Case*, 8 Gratt. [49 Va.] 637, are to the contrary. I do not

interpret *Wormley's Case,* 8 Gratt. [49 Va.] 712 [56 Am. Dec. 162], as settling, as it is contended, this conflict of authority. There is no reference to the prior cases, and it is manifest that that case was decided on the misconduct of the sheriff which is specially animadverted upon and censured. In this unsettled and indeterminate condition of our cases, I think we are authorized to deduce and lay down a rule not in conflict with them, as a whole; and in harmony with the general current of decisions elsewhere. And that rule seems to me to be this: That separation out of the custody and control of the officer is *prima facie* sufficient to vitiate a verdict; and that it is incumbent upon the Commonwealth to refute that presumption by disproving all probabilities or suspicions of tampering; unless, indeed, the prisoner's own testimony, as in *Thompson's Case,* should be sufficient to that end. This principle, I think, reconciles our own cases, and comports with the general current of the cases to which we have been referred. It is an ample safeguard of the purity of jury trial, for which I entertain habitual reverence; and I do not think we thereby impair the weight to be attached to our earlier decisions."

While the holdings in the cases relied on are not specifically overruled, the clear intendment of the ruling in the *Philips' Case* was to enunciate a new doctrine, viz: "That separation out of the custody and control of the officer is *prima facie* sufficient to vitiate a verdict; and that it is incumbent upon the Commonwealth to refute that presumption by disproving all probabilities or suspicions of tampering; unless, indeed, the prisoner's own testimony * * * should be sufficient to that end."

In *Barnes' Case,* 92 Va. 803, 23 S. E. 784, 787, decided prior to the amendment of section 4902, Judge Buchanan, dealing with a similar question, cites with approval *Philips' Case* for the proposition that "In a prosecution for a felony in this State, where the punishment may be death or confinement in the penitentiary for more than ten years, the jury must be kept in the custody of the sheriff or other

proper officer, when not in the presence of the court, and their separation out of his custody and control is *prima facie* sufficient to vitiate the verdict."

In *State* v. *Clark,* 51 W. Va. 457, 41 S. E. 204, 205, the court dealing with a kindred statute said: "Separation or misconduct of the jury in a criminal case only raises a presumption of impurity in the verdict, and if that presumption be fully overcome and it be shown beyond a reasonable doubt that the prisoner has not been prejudiced thereby, such separation or misconduct does not vitiate the verdict."

The Commonwealth, to sustain its contention that a separation does not *per se* vitiate the verdict, relies upon *Thompson* v. *Commonwealth,* 8 Gratt. (49 Va.) 637. The facts in that case are very similar to the facts in the case at bar. There, one of the jurors left the jury room and went downstairs to the pavement before the door of the hotel, for the purpose of meeting with a passer-by, to send a message to his family, and after remaining there about five minutes and seeing no one passing, he returned to the jury room. The court held that such a separation, which negatives all abuse, tampering, or improper influence, did not *per se* vitiate the verdict. In the opinion, *McCaul's Case* and *Overbee's Case* are specifically dealt with, the court saying: "But this case is distinguishable from McCaul's and Overbee's in the character and circumstances of the separation and absence of the jurors; and in a more important point still, in this, that whilst in those cases the separation was proved by other witnesses, in this it is proved by the juror alone, as a witness of the prisoner, who in the same breath, negatives communication or conversation with anyone; and by consequence not only negatives the presumption or probability, but even possibility, of tampering or abuse of any kind. It is not necessary therefore to overrule those cases in order to sustain this verdict. It will be time enough to decide whether or not they shall stand when a case similar in all respects shall arise. When it does, if those cases shall be interpreted to have decided that

a separation *per se* will vitiate a verdict, there will be against them and in the one scale reason, an unwavering current of English authority, ancient and modern, the overwhelming weight of American authority from our sister States, with the Virginia adjudications before referred to; and in the other only the argument of the *stare decisis.*"

The language there employed is peculiarly applicable to the case at bar, with this exception, viz: We feel that the time has arrived when this court should overrule the holdings in those cases—that a mere separation of the jury *per se* vitiates the verdict.

 Our conclusion is, that whether or not there has been such a separation of the jury as will vitiate should be determined upon the facts appearing in the particular case. We, therefore, lay down the rule that separation of the jury out of the custody and control of the court, or out of the custody and control of the officer to whom the jury has been legally committed, is merely *prima facie* sufficient to vitiate a verdict; and when it appears that there has been a separation of the jury, the burden is upon the Commonwealth to refute the presumption by disproving, beyond a reasonable doubt, all probabilities or suspicions of tampering, and that the prisoner has not been prejudiced thereby, unless the prisoner's own proof should be sufficient to that end.

 We are of the opinion that in the case at bar the prisoner's own proof shows that no attempt was made to influence or tamper with the juror, Brown. There is not even a suggestion that in reality the prisoner has been prejudiced by the ill-advised conduct of Brown in separating himself from the other members of the jury. No complaint is made by the accused that the verdict is not supported by the evidence. There is not a breath of suspicion to indicate that the stream of justice has been contaminated. The sole reliance of the prisoner is upon an archaic rule of law which is out of harmony with modern judicial action, which seeks to apply the rule of common sense in the dis-

position of criminal cases, when it clearly appears that the prisoner has had a fair and impartial trial upon the merits of the case, and that no statutory or constitutional provisions have been violated.

The judgment of the trial court will be affirmed.

*Affirmed.*