# Staunton

## GARLAND COMPTON AND REUBEN COMPTON V. THE COMMONWEALTH OF VIRGINIA.

September 20, 1934.

Present, All the Justices.

The opinion states the case.

*Mack Coleman* and *S. H. Bond,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error is to review the proceedings of a trial in which Garland and Reuben Compton were convicted of murder in the first degree and sentenced to twenty years confinement in the penitentiary.

The theory of the Commonwealth, supported by its evidence, was that the defendants, at night, went in a truck equipped for hauling stock into a pasture owned by one Bays Nickels, for the purpose of stealing cattle. Bays Nickels, Harry Delias and Elbert Collett heard the truck going in the direction of the pasture, pass Nickels' home, and immediately followed. When they arrived on the scene, the truck had been driven into the field; its rear backed up against a bank, its floor level with the top of the bank, and the rear gate down. Nickels asked what was going on, no one replied, but four or more men "scattered" and began shooting. During the mêlée Elbert Collett was shot and later died from the wound.

The first error assigned is to the ruling of the court in permitting the Commonwealth to prove that cattle were

kept in this and adjoining fields. Without this evidence proof of the Commonwealth's theory would have been incomplete. No other reason is suggested for the presence of the truck and its occupants in Nickels' pasture. There is no merit in this contention.

The prisoners objected to Instruction IX, which told the jury that if they believed that either Garland Compton, Reuben Compton, Bascomb Compton or Vernon Elliott shot and killed Collett, and the other three were present, aiding, abetting, etc., then all were guilty.

 The ground of objection urged in this court is that the evidence does not show that Vernon Elliott was present at the time of the shooting. While defendants made a general objection to all instructions given for the Commonwealth, no specific objection was urged to any instruction. We can not, unless the error is apparent, consider an objection which the record does not show was urged in the trial court. As a matter of fact the evidence introduced by defendants tends to show that Vernon Elliott was present when the crime was committed.

The motion to set aside the verdict was based on three grounds: (1) The verdict was without evidence to support it; (2) two of the jurors, prior to the trial, had formed and expressed opinions as to the guilt of the prisoners; (3) J. M. Craft, clerk, and O. B. Darnell, sheriff, employed an attorney to, and who did, assist in the prosecution.

In view of the fact that the case will have to be reversed on another point, it is inadvisable to make a detailed statement of the evidence.

 The second ground relied upon to support the motion is based upon the allegation that C. M. Flanary and E. G. Carter, two of the twelve jurors, before trial, had expressed decided opinions as to the guilt of defendants. There are two reasons, either of which justified the trial court in overruling the motion on this ground. While one of the prisoners stated that he had no knowledge that either of the jurors had before trial made a statement hostile to him, the record does not show what effort, if any, was

made to ascertain the qualifications of the jurors before they were accepted. The general rule is, that on a motion to set aside a verdict for the existence of something which occurred before verdict, the accused must allege and prove that the existence of the ground relied upon was not only unknown to him until after verdict, but that he, by the exercise of due diligence, could not have ascertained it before verdict. The other reason is that evidence offered to sustain the allegation is not convincing, and the jurors denied they had made any such statements, and were corroborated by other witnesses.

"A motion for a new trial after the verdict, on the ground of the disqualification of a juror, is addressed to the sound discretion of the trial judge, and where there is a conflict of testimony as to the language and conduct of the juror on which exception is founded, it is his duty to weigh and decide upon the credibility of the opposing statements of the witnesses and juror, and to determine whether in justice to the accused, and upon all the circumstances of the case, a new trial ought to be awarded." *Cox* v. *Commonwealth,* 157 Va. 900, 914, 162 S. E. 178, 183. It does not appear that there was any abuse of the discretion by the court. On this point we find no error in the ruling of the trial court.

The third and last ground urged to sustain the motion and all the proof offered in support thereof, are set forth in the following excerpt taken from the record: "Be it remembered that on the trial of this case after the verdict of the jury had been returned, the defendants moved the court to set the verdict aside because O. B. Darnell, sheriff of the county, and J. M. Craft, clerk of the county, had employed counsel to prosecute the defendants and in support of the motion introduced Hagan Bond who testified as follows:

"Q. I believe your name is Hagan Bond?

"A. Yes.

"Q. We want to ask you if you were employed to prosecute

and if you did prosecute Garland and Reuben Compton in this case? If so who employed you?

"A. Yes, J. M. Craft and O. B. Darnell employed me.

"Q. Was J. M. Craft clerk of the county and was O. B. Darnell high sheriff of the county?

"A. They were.

### Cross Examination

"Q. Are they citizens of the county?

"A. Yes, I presume they are. They would have to be.

"Q. Is the high sheriff jailor of the county?

"A. Yes.

"Q. Was Collett worth anything? Have any property?

"A. I never made any investigations. I don't believe Mrs. Collett ever talked any to me about it. I just talked to her a little here in the court. I understand they are very poor people.

"Q. I believe Mr. Craft, the clerk, owns some land and Mr. Craft and Mr. Darnell are in partners. Is that correct?

"A. They informed me that they had a large number of cattle in this boundary where the truck in question was or close to the place."

The Attorney-General, with some force, contends that the above is insufficient to sustain the motion, because it was not alleged, or proven, that defendants did not know until after verdict that the officers in question had employed a private prosecutor.

██ The general rule, as heretofore stated, is that in neither a civil nor a criminal case will a party be allowed to sit mute, in the presence of the court, with knowledge of an irregularity and wait until the return of an adverse verdict, then rely upon such irregularity to vacate it. No litigant "will be permitted to play fast and loose with the court." *Williams' Case*, 93 Va. 769, 25 S. E. 659.

Public policy demands that the action of the clerk and sheriff in the performance of duties incident to the trial in a criminal case should be above suspicion. Suspicion fol-

lows unless these duties are performed by officers who stand indifferent to the outcome of the trial. The clerk is charged with a duty of keeping the jury list under lock and key, and to be present when their names are drawn. The sheriff is required to summon the venire, and, in a proper case, to guard the jury from outside influence. To permit either to perform these important and delicate duties in a criminal case in which both are so interested that they, at their own expense, have employed counsel to prosecute, is more than an irregularity. Proof of the fact is sufficient to raise serious doubt of the fairness and impartiality of the result.

So jealous is the law of the secrecy, the free and untrammeled deliberation of jurors upon their verdict, that no outside person, not even the judge, nor the officer in whose charge they have been committed, is allowed in the room with them during their deliberation. The fact that the jury, during the trial of a capital case, have become separated, without more, is sufficient in many jurisdictions to vacate the verdict.

In the recent case of *Owens* v. *Commonwealth,* 159 Va. 1015, 1022, 167 S. E. 377, 380, Campbell, C. J., speaking for the court, modified this rule to the following extent: "We, therefore, lay down the rule that separation of the jury out of the custody and control of the court, or out of the custody and control of the officer to whom the jury has been legally committed, is merely *prima facie* sufficient to vitiate a verdict; and when it appears that there has been a separation of the jury, the burden is upon the Commonwealth to refute the presumption by disproving, beyond a reasonable doubt, all probabilities or suspicions of tampering, and that the prisoner has not been prejudiced thereby, unless the prisoner's own proof should be sufficient to that end."

In the case in judgment, the Commonwealth made no attempt to remove the suspicion created by the fact that the clerk, who was present when the jury was drawn, and the sheriff, who served the summons, and to whom for three days, in the recess of the court, and three nights the jury were committed, were so interested in securing a convic-

tion that they employed a private prosecutor. A stronger case is established by these facts for vacating the verdict than where a mere sequestration of the jurors is proven.

██ The Attorney-General contends that the motion should be overruled because the prisoners neither alleged, nor proved, that they were prejudiced by the fact that the officers employed private counsel. The vice in the situation is, not that officers employed counsel, but that the officers so doing continued to perform their official duties pertaining to a trial in which the very lives of the prisoners were involved. On the one hand, they were motivated by their desire to obtain a conviction, on the other hand their duty to the Commonwealth and the prisoners required that their action be above suspicion, fair and impartial—a decided conflict between their personal opinion and desires and the impartial performance of their official duties. The simple statement of the situation leaves us no alternative but to condemn the action because its tendency is to impair the purity of the trial by jury in criminal cases. Prejudice is presumed, when an accused charged with an offense for which the death penalty may be invoked, proves that the officer to whom the jury has been committed for the purpose of guarding them against outside influence was so interested in the result that he employed a private prosecutor to obtain a conviction. In such a case the accused should not be required to prove the intent or motive of such officer, the ascertainment of which is almost impossible except by the *ipse dixit* of the party whose act is the subject of investigation.

For the reason stated, the judgment of the trial court is reversed, the verdict of the jury set aside, and the case is remanded for a new trial.

*Reversed and remanded.*