# Richmond

## HAYWOOD JOHNSON v. COMMONWEALTH OF VIRGINIA.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*Gordon E. Campbell,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

Hudgins, J., delivered the opinion of the court.

Haywood Johnson was convicted of murder in the first degree, and given the death penalty. The facts upon which the Commonwealth relies, and which were established by the testimony of six eye-witnesses, are substantially as follows:

About 8 P. M. on October 28, 1934, the deceased, Joseph Hogshire, and two other white men, Leroy Messick and J. D. McDermott, entered a negro cafe on Cypress avenue,

Princess Anne county, where they invited several of the negro patrons present to drink with them whiskey, which they had previously obtained at a State store. After spending an hour or more in this pastime, McDermott "passed out drunk." The proprietor, Wallace Burke, requested the two other white men to take their companion outside. This was done, seemingly in an orderly manner. A negro named Charlie Davis, who like the others had been drinking, became entangled in a big glass window in the front of the building. As a result, the glass in the window was broken, and Davis sustained a cut over one of his eyes. The accused, who weighed approximately two hundred pounds, said something to Davis. Hogshire, who weighed only about a hundred and twenty pounds, was standing about ten feet away from the two negroes. This was the position of the parties, when Johnson, without saying a word to Hogshire, or Hogshire to him, walked over and knocked Hogshire down and immediately fired the fatal shot while Hogshire was lying on the ground. Johnson turned and struck Leroy Messick from behind, and then left the scene.

The only testimony, which tends to contradict the above evidence, was that of the accused himself, who stated that he was helping Davis with his eye when both Hogshire and Messick, without cause, jumped on him; that he "flung out" his right arm and knocked Hogshire down; that he saw the deceased start to rise from the ground, and as the deceased did so he put his hand near his hip, which led the accused to believe that he was going to be shot, and to prevent that he drew his pistol and shot the deceased. After the killing no weapons of any kind were found on Hogshire.

The first assignment of error is to the action of the trial court in permitting the introduction of evidence to the effect, that at the time the accused was arrested he was in bed with a woman, not his wife. The accused contends that this evidence tends to prove he was guilty of committing a second crime in no way connected with

the charge of murder, and was calculated to prejudice the jury against him.

We find no reversible error in the admission of this evidence. It was evidently introduced in anticipation of the testimony of the accused, who claimed that he shot in defense of his own life. The record shows that the time of the killing was about 9 P. M., or shortly thereafter. The police were immediately notified of the killing, and after taking the deceased to a doctor, they began the hunt for the accused, and about 3 A. M., some six hours later, found him in bed with a woman. Ordinarily, a normal person, who kills in self-defense, shows some degree of remorse, or regret over the necessity which occasioned the taking of another's life. The circumstances under which the officers found the accused at the time of his arrest, tend to show a total absence of any regret, and tend to weaken accused's contention that he killed only through necessity.

The next assignment of error is based upon the refusal of the trial court to set aside the verdict and grant a new trial, because the jury, during the course of the trial, had become separated.

It appears that during the trial the jury were taken to a toilet downstairs; that when they returned, three, or perhaps four, of the panel, stopped at the door and went out on the porch, some forty-five feet from the bench, to finish smoking. The two doors which open from the court room to the porch have large upper glass panels, through which a large part of it is in sight of the bench. The court was in session, and the sheriff was still on duty and seated some thirty-five feet from one of the entrances to the porch. The other eight members of the panel went into the court room and took their seats in the jury box. That during the time the four jurors were on the porch the case was not discussed or mentioned between them or any of them, or by others in their presence. In some of the affidavits it is stated that there were several spectators on the porch at this time, and in other

affidavits this is denied. At any rate, the separation was only incidental and trivial. The separation was known to the accused and his counsel before the case was submitted to the jury, and no motion was made or exception taken until after the verdict had been returned. Considering all the evidence on the subject, it seems clear that the Commonwealth has disproved all probability or suspicion of tampering with the jury, and that the prisoner has not been prejudiced by this technical separation. See *Owens* v. *Commonwealth,* 159 Va. 1015, 1022, 167 S. E. 377; *Compton* v. *Commonwealth,* 163 Va. 999, 175 S. E. 879.

The third and fourth assignments of error are based upon Bill of Exception No. 5, the pertinent part reading thus: "The accused, by counsel, asked questions of witnesses as to the reputation of the negro cafe as being a notorious bootleg joint, to establish the interest of the witnesses for the Commonwealth, one of whom owned the cafe, and others who frequented it. Counsel for the Commonwealth objected, and the court sustained the objection. The court in ruling upon the matter stated in the presence of the jury that it appeared that the witnesses were not biased and were fair in giving their answers to all questions."

"To the refusal of the court to permit the accused to ask questions and to the remarks of the court in expressing an opinion on the value of testimony of the witnesses, the accused by counsel excepted and tenders," etc.

The statement of the facts upon which the objection is based is too meagre and indefinite. In the first place, neither the questions propounded to the witnesses, nor the answers anticipated, are set forth. In the second place, as an abstract proposition of law, the reputation of the cafe does not appear to be pertinent to the issues raised. From the setting, it appears that the court made the remarks about the appearance of the witnesses in reply to an objection of counsel for the accused, and as a reason for its ruling. As an abstract proposition it is

error for the trial court to comment upon the credibility of a witness, but under the meagre circumstances disclosed we cannot say that the remarks in question constitute reversible error.

The fifth assignment of error is based upon an exception reading thus: "After Johnson had on direct examination testified that he had been shot two years previously by a man in Norfolk county, he was asked by the Commonwealth whether or not he had had this man arrested and locked up. He answered 'No.' The accused by counsel objected to this line of examination on the ground that it tended to show that the accused was at fault, the said shooting taking place two years previously. The court overruled the objection and the accused by counsel excepted."

This bill of exception does not state the real situation. From the certificate of Johnson's own testimony it appears, that on direct examination, the excuse he offered for having in his possession a pistol, was that some two years previous thereto a man had shot him. On cross-examination the Commonwealth's attorney, directing his examination to this statement made by the accused, merely asked whether he had had the man arrested, to which he replied, "No." No other evidence was offered on the subject. Clearly there was no error in permitting the question and answer.

While the trial court may have committed a technical error in making the remarks to which objection was made, the error is not so material as to require a reversal of the case, in view of the fact that the evidence as a whole conclusively shows the accused is guilty of murder in the first degree. For the reason stated, the judgment of the trial court is affirmed.

*Affirmed.*