# Richmond

LEONARD R. ROBINSON v. COMMONWEALTH OF VIRGINIA.

December 6, 1943.

Record No. 2729.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles Henry Smith*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *M. Ray Doubles, Assistant Attorney General*, for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the record of a trial, in which the accused was convicted of rape and sentenced to confinement in the penitentiary for fifteen years.

It is not necessary to discuss the facts, as it is conceded that the evidence for the Commonwealth, while in conflict with the evidence for the accused, is sufficient on review to support the verdict. The only question presented is whether the trial court committed reversible error in permitting the jurors, after they had been sworn and had heard part of the evidence, to separate and to return to their respective homes for the night.

Prior to 1878, the common law practice prevailing in Virginia required the jurors to be kept together during the entire trial of a person charged with the commission of any felony. No outside communication could be had with the jurors except in case of emergency or imperative necessity. This practice was based upon the principle that the accused, in every felony case, was not only entitled to a jury free from exception when impanelled to try his case,

but that he had a right to have them remain so until the verdict was rendered by keeping them free, as far as possible, from all extraneous influences. This common law practice is still in force in Virginia except as modified by statute.

The first modification of the rule is found in Acts of 1877-78, sec. 10, pp. 341-2, providing that " * * * where the punishment cannot be death or confinement in the penitentiary. ten years, the jury shall not be kept together, but shall be treated as jurors in civil cases, unless the court direct otherwise."

In 1893, this section was amended (Acts 1893-4, p. 223) to include juries sworn to try felony cases where the maximum punishment was fixed at ten years or less.

The third and last change in the statute is found in the Acts of 1922, p. 545 (Michie's Code 1942, sec. 4902), which provides: "In any case of felony where the punishment cannot be death, the jury shall not be kept together unless the court otherwise direct."

*Barnes* v. *Commonwealth*, 92 Va. 794, 23 S. E. 784, was decided December 12, 1895. In the opinion delivered by Judge Buchanan, at page 803, it is said: "In a prosecution for a felony in this State, where the punishment may be death or confinement in the penitentiary for more than ten years, the jury must be kept in the custody of the sheriff or other proper officer, when not in the presence of the court, and their separation out of his custody and control, is *prima facie* sufficient to vitiate the verdict."

The case was reversed on the ground that it did not affirmatively appear from the orders entered by the trial court that the jury had been placed in charge of an officer of the court with instructions to keep the jury together, and "neither speak to them yourself, nor suffer any other person to speak to them, touching any matter relative to this trial, until they return into court."

Judge Riely dissented from the holding of the majority on the sole ground, as stated by him: "It is a proper and well-established practice that the jury, upon an adjournment,

should be placed in the custody of the proper officer, and kept together, free from all extraneous influences; but it is not a necessary part of the record to sustain the judgment. It is * * * one of the incidents of the trial, that this court should presume was regular, unless the contrary appears."

In the *Barnes Case* the Commonwealth offered to prove that at every adjournment of court the jury trying the case were put in the custody of the sheriff, who was duly sworn, and that he kept them together during adjournment and turned them into court in his custody according to instructions. This court held that the trial court, after final judgment, had no right to amend the record by showing that the proper steps had been taken during the progress of the trial. While subsequent opinions show a tendency to follow the views expressed in Judge Riely's dissent, the opinions reveal the emphasis which this court has placed upon the necessity of taking every reasonable precaution to prevent the possibility of a jury being swayed by extraneous influences in reaching their verdict.

An extensive review of the cases decided before and since the last modification of the common law practice was made by Mr. Chief Justice Campbell in *Owens* v. *Commonwealth*, 159 Va. 1015, 167 S. E. 377, in which this is said, at page 1022: "We, therefore, lay down the rule that separation of the jury out of the custody and control of the court, or out of the custody and control of the officer to whom the jury has been legally committed, is merely *prima facie* sufficient to vitiate a verdict; and when it appears that there has been a separation of the jury, the burden is upon the Commonwealth to refute the presumption by disproving, beyond a reasonable doubt, all probabilities or suspicions of tampering, and that the prisoner has not been prejudiced thereby, unless the prisoner's own proof should be sufficient to that end."

This rule was approved and followed in *Compton* v. *Commonwealth*, 163 Va. 999, 175 S. E. 879; and *Johnson* v. *Commonwealth*, 165 Va. 834, 183 S. E. 577.

The Attorney General concedes the rule to be well established in this jurisdiction, but contends that the accused is estopped from raising the objection because it appears from an order entered at the end of the first day of the trial that "the Court announced that it would stand adjourned until the next day at 10:00 o'clock, a. m., and that it would do this without the completion of the testimony of the witness then on the stand, because of the fact that there were a number of farmers on the jury without any help 'at home and that the case could not be completed on this day in any event.

"And thereupon the Court instructed the jury that Court would be adjourned until 10:00 o'clock, a. m. of the next day, and that they were not to discuss the case with anyone, to allow anyone to discuss the case with them or to discuss the case in their presence, and further, that they were not to attempt to reach a conclusion in the matter until the case had been concluded and submitted to them. And there being no objection, Court was adjourned until the following day at 10:00 o'clock, a. m., and the jurors were permitted to return to their respective homes, and thereupon the Defendant was allowed to leave the Courtroom under the recognizance of bail heretofore executed by him."

The Attorney General, in effect, contends that the failure of the accused at the time to object to the separation of the jury and the expressed permission for them to return to their respective homes for the night constitutes a complete waiver of his right to raise the question at a later stage of the trial.

We cannot accede to this contention. It places too heavy a burden upon the accused. It is apparent from the order that some of the jurors had informed the trial judge. of the importance of their personal affairs and their earnest desire to return to their homes. If, under the circumstances, the accused had raised an objection to the decision of the trial court, the probabilities are that he would have created some feeling of animosity among the jurors towards him. At least, the responsibility of preventing the jurors from returning to their homes would have been placed on the

accused, and not on the Commonwealth where it rightfully belongs. Furthermore, the accused was not then in a position to know definitely whether the Commonwealth would ask for the extreme penalty, or whether the Commonwealth would assume the burden of disproving "all probabilities or suspicions of tampering" if and when the question was raised.

After the verdict and before sentence was pronounced, the accused moved to set aside the verdict on several grounds. Among them was the following: "The trial judge erred as a matter of law in not keeping the jury together, during the progress of the trial," which is mandatory in cases where the punishment may be death. The motion was docketed and heard four days later, at which time it appeared that eight of the twelve jurors who had rendered the verdict were present in court, but the Commonwealth declined to call any of the jurors, stating that it had no evidence to introduce, and rested its case on the record. The accused introduced no evidence and likewise rested his case upon the record. It thus appears that the record presents a case in which the accused was charged with a capital offense and in which it appears that the court deliberately, during the progress of the trial, adjourned the court from day to day without ordering the jury to be kept together in the custody of its officer—a clear violation of one of the safeguards with which the common law practice has surrounded juries in capital cases in this jurisdiction from the time of the organization of common-law courts in Colonial Virginia.

██ ██. Even in the case of a temporary separation of the jury while it is in the custody of the court, or after it has been placed in the custody of the officers of the court, the burden is on the Commonwealth to refute the presumption against it "by disproving, beyond a reasonable doubt, all probabilities or suspicions of tampering, and that the prisoner has not been prejudiced thereby." The Commonwealth made no attempt to carry this burden and introduced no evidence.

Paraphrasing the language of Judge Buchanan in the *Barnes Case, supra,* at page 807, we think it may be safely

said that any practice so salutary and wise and so admirably calculated to protect and insure the interests of both the accused and the Commonwealth in capital cases, and which has been uniformly pursued for a great length of time, should be regarded as the settled law within this jurisdiction.

*Reversed and remanded.*