# Richmond

## LAWRENCE POWELL v. COMMONWEALTH OF VIRGINIA.

January 24, 1944.

Record No. 2796.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*W. A. Hall, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

On December 21, 1939, the plaintiff in error was convicted of rape by a jury in the Hustings Court of the city of Roanoke, and his sentence fixed at five years in the penitentiary. There was a motion for a new trial, based on

various objections made during the trial and on after-discovered evidence, which was overruled on March 15, 1941, when judgment was entered on the verdict. On June 8, 1942, we affirmed that judgment. *Powell* v. *Commonwealth*, 179 Va. 703, 20 S. E. (2d) 536. Shortly thereafter Powell was conveyed to the State Penitentiary at Richmond to undergo the term of punishment imposed upon him.

In January, 1943, the prisoner filed in this court a petition for a writ of *habeas corpus* against the superintendent of the penitentiary, claiming that due to certain alleged irregularities in his trial in the lower court (not pertinent or kin to those involved in the present controversy), his confinement was unlawful. Without written opinion we denied the petition.

In June, 1943, Powell filed in the District Court of the United States for the Eastern District of Virginia, at Richmond, a petition for a writ of *habeas corpus* against the superintendent of the penitentiary, alleging that the judgment of conviction under which the petitioner was being held was illegal and void for the reason that he was not personally present when sentence was pronounced upon him. This point had not been raised before or passed upon by us on the former appeal.

The District Court awarded the writ and commanded the superintendent of the penitentiary to produce the body of the prisoner before the court on July 7, 1943, in order that the legality of his imprisonment might be inquired into and determined.

While that *habeas corpus* proceeding was pending in the United States District Court, the prisoner was brought before the Hustings Court of the city of Roanoke on June 28, 1943, in order that he be resentenced. He moved the court to set aside the verdict of the jury and grant him a new trial on the ground, then raised for the first time, that, although the Commonwealth had asked for the death penalty, upon the adjournment of court on December 20, 1939, after the evidence had been partly heard, the jury were ordered to appear in court the next day at 9:30 o'clock a. m., and

in the meanwhile were not kept together and placed in the custody of a proper officer, but were permitted to go to their respective homes and spend the night. This motion was overruled and an exception duly taken.

The plaintiff in error further objected to the pronouncement of judgment against him on June 28, 1943, on the ground that the court was without authority to do so because of the lapse of time since any valid order had been entered in the record of his trial. This objection was likewise overruled and an exception taken.

Thereupon the court entered judgment upon the verdict and ordered that the accused be confined in the State Penitentiary at Richmond for a term of five years, less such time as he had been confined in jail and in the State Penitentiary, pursuant to the order of the court theretofore entered on March 15, 1941.

To review the validity of the judgment thus entered on June 28, 1943, the present writ of error has been granted. In the meantime the *habeas corpus* proceeding instituted by the plaintiff in error in the United States District Court was dismissed, without prejudice, upon the joint petition of the Attorney General of Virginia, representing the superintendent of the State Penitentiary, and the attorney for the prisoner.

The first assignment of error is to the action of the lower court in refusing to set aside the verdict of the jury because of the separation of the jury during the trial. According to the record on the first appeal the incident occurred in this manner: After the conclusion of the Commonwealth's evidence, Mr. Scott, of counsel for the accused, out of the presence of the jury, addressed the court in these words: "Your Honor, I have talked to Mr. Smith,* and have also talked to the boy (the accused), and as far as we are concerned, if we don't finish this case today, we will be glad to have the jurymen go home rather than be confined to-

---

*It would appear from the context that the "Mr. Smith" here referred to was Arthur Smith of counsel for the accused, but this is not entirely clear because the attorney for the Commonwealth was Robert Smith.

gether." The court replied: "That's fine. I appreciate that."

A motion of the accused to strike the Commonwealth's evidence was then argued and overruled. Several witnesses for the defense were heard, but before the evidence for the defense was concluded the court thus addressed the jury:

"Gentlemen, a legal question has been raised, and I want to investigate it in order to endeavor to rule properly on it. I see no reason, therefore, to keep you here until I can investigate it. In cases of this type, the law requires that the jury be kept together. For your benefit, however, I have had a conference with the Commonwealth's attorney and his assistant, and Mr. Scott and Mr. Smith representing the defendant, and they are willing to agree not to keep the jury together regardless of the verdict of this jury and raise no question about it one way or another. Both sides have agreed to waive the law in this case for your convenience. The law does make it my duty to impress upon you this: That you are not to discuss this case with anyone. Don't discuss it in your home. I will ask you not to read anything in the newspapers—probably there will not be anything in it touching this case anyway. Nobody will intentionally do it, but should any person thoughtlessly ask you some question about this case, let me know who the person is; and don't discuss it. Court is adjourned until tomorrow morning at nine thirty."

The incident is further clarified by the certificate of exception certifying the record on the present appeal, wherein it is stated that the jury "were not placed in the custody of an officer, but permitted to go to their respective homes and spend the night, which action of the court in permitting the jury to separate was taken, as shown by the record, at the instance and request of the defendant, Lawrence Powell, through his attorney, and with the consent of the attorney for the Commonwealth."

It thus appears that the separation of the jury was with the consent of counsel for the plaintiff in error, the attorney for the Commonwealth, and the court, arrived at out of the

presence of the jury, and at the instance of counsel for the plaintiff in error. The Attorney General contends that under such circumstances the plaintiff in error waived the right to have the jury kept together in the custody of a proper officer. The plaintiff in error, on the other hand, contends that his right to have the jury kept together is one which he could not waive even by an express consent thereto.

The ancient rule of the English law was that in all cases, civil as well as criminal, a jury once sworn and charged with a cause could not be discharged or permitted to separate before they had agreed on their verdict. *State* v. *Miller*, 18 N. C. 500.

In Virginia, except as it is modified by statute, the common-law practice which requires that the jury be kept together during the entire trial still prevails in felony cases. *Robinson* v. *Commonwealth, ante*, p. 42, 28 S. E. (2d) 10.

Code, section 4902 (as amended by Acts 1922, ch. 325, p. 545; Acts 1928, ch. 430, p. 1113; Acts 1930, ch. 233, p. 623), provides: "In any case of a felony where the punishment cannot be death, the jury cannot be kept together unless the court otherwise directs."

See also, Acts 1936, ch. 133, p. 252 (Michie's Code of 1942, section 4902a), dealing with a partial separation of the jury.

In the recent case of *Robinson* v. *Commonwealth, supra*, we held that under Code, section 4902, as amended, the jury must be kept together in the trial of a felony case where the punishment may be death, thus reaffirming the principles laid down in *Barnes* v. *Commonwealth*, 92 Va. 794, 23 S. E. 784. We likewise reaffirmed the principles laid down in *Owens* v. *Commonwealth*, 159 Va. 1015, 1022, 167 S. E. 377, that the separation of the jury out of the custody and control of the court, or out of the custody and control of the officer to whom the jury has been legally committed, does not *per se* vitiate the verdict, but "is merely *prima facie* sufficient to vitiate" it; and that "when it appears that there has been a separation of the jury, the burden is upon the Commonwealth to refute the presumption by

disproving, beyond a reasonable doubt, all probabilities or suspicions of tampering, and that the prisoner has not been prejudiced thereby, unless the prisoner's own proof should be sufficient to that end."

This rule prevails in West Virginia (*State* v. *Cotts*, 49 W. Va. 615, 39 S. E. 605, 55 L. R. A. 176), and in some other jurisdictions (Beale's Criminal Pleading and Practice, 1899 Ed., section 248).

There is a conflict of authority as to whether or not the accused can bind himself by consenting to a separation of the jury in a case in which they should be kept together. 20 R. C. L., New Trial, section 33, p. 250; 16 C. J., Criminal Law, section 2528, p. 1076; 23 C. J. S., Criminal Law, section 1387, pp. 1066, 1067. Numerous cases on the subject are collected in the annotations in 43 Am. Dec. 86; 24 L. R. A. (N. S.) 781; 34 A. L. R. 1115; 79 A. L. R. 821.

Generally speaking, in those jurisdictions in which it is held that the mere separation of the jury *per se* vitiates the verdict because there is a conclusive presumption that the accused has been prejudiced thereby, it is also held that the accused can not consent to or waive the right that the jury be kept together. See *Long* v. *State*, 132 Tenn. (5 Thomp.) 649, 179 S. W. 315, 316; *Lee* v. *State*, 132 Tenn. (5 Thomp.) 655, 179 S. W. 145, L. R. A. 1916B, 963; *State* v. *O'Leary*, 110 N. J. L. 36, 163 A. 904; *Peiffer* v. *Commonwealth*, 15 Pa. 468, 53 Am. Dec. 605; *State* v. *Craighead*, 114 La. 84, 38 So. 28; *Woods* v. *State*, 43 Miss. 364.

On the other hand, in those jurisdictions in which it is held that the separation of the jury does not *per se* vitiate the verdict, it is generally held that the accused may consent to a separation of the jury and may waive the right that they be kept together throughout the trial. See *Heck* v. *Commonwealth*, 163 Ky. 518, 174 S. W. 19; *Arnold* v. *Commonwealth*, 194 Ky. 421, 240 S. W. 87; *Chadwell* v. *Commonwealth*, 230 Ky. 840, 20 S. W. (2d) 1005; *Colley* v. *State*, 164 Ga. 88, 138 S. E. 65; *State* v. *Bowman* (Mo.), 12 S. W. (2d) 51; *Henning* v. *State*, 106 Ind. 386, 6 N. E.

803, 7 N. E. 4, 55 Am. Rep. 756; *Stephens* v. *People*, 19 N. Y. 549; *Whitfield* v. *State*, 45 Okla. Cr. 397, 283 P. 266.

In Kentucky there is a statute which expressly requires that the jury be kept together in capital cases. In the recent case of *Chadwell* v. *Commonwealth, supra*, it was held that the statutory right to have the jury kept together is a right which the accused could and did waive by consenting thereto.

In *Bebee* v. *People*, 5 Hill (N. Y.) 32, it was held that an accused could not complain where the jury had been allowed to separate at his instance, especially where no prejudice had been shown.

In *Whitfield* v. *State, supra*, the facts are somewhat similar to those here. After the evidence had been concluded and the cause submitted, by agreement between counsel for both sides and the court, the jury were permitted to separate overnight. The verdict of the jury was adverse to the accused. Other counsel was employed by the accused who made a motion for a new trial on the ground that the separation of the jury was wrongful and necessitated setting aside the verdict, although the accused had consented to the separation. The highest court of Oklahoma pointed out that there were many rights which an accused could waive, among them the constitutional right to a trial by a jury, and then concluded (283 P., at page 267): "The right to have the jury kept together is a right belonging both to the state and to the defendant, and, where both the state and the defendant consent to the separation of the jury after the final submission of the cause and before the verdict is returned, the defendant waives his right to have the jury kept together, and will not be heard to complain in this court that his rights were prejudiced by such separation. Where the jury are permitted to separate after the final submission of the case, upon consent of the state and the defendant, prejudice will not be presumed in favor of the defendant, and the burden will be upon him to show that the jury, during such separation, were guilty of misconduct to his prejudice."

No misconduct of the jury having been shown during such separation, it was held that the motion for a new trial was properly overruled.

In Virginia, as we have seen, this court has aligned itself with the latter class of cases and has adopted the rule that the mere separation of the jury does not *per se* vitiate the verdict, but "is merely *prima facie* sufficient" to do so, and raises a rebuttable presumption that the accused has been prejudiced thereby. *Owens* v. *Commonwealth, supra.* It logically follows, we think, that keeping the jury together throughout the trial is not a jurisdictional prerequisite to a valid verdict, for if it were, the presumption of prejudice would be conclusive and not merely rebuttable.

While, as was said in *Robinson* v. *Commonwealth, supra,* the practice of keeping the jury together in capital cases is "salutary and wise," is "admirably calculated to protect and insure the interests of both the accused and the Commonwealth," and "should be regarded as the settled law within this jurisdiction," it is, we think, an incident of the trial which may be waived by the accused. See *Kibler* v. *Commonwealth,* 94 Va. 804, 811, 26 S. E. 858; *Wilson* v. *Commonwealth,* 157 Va. 962, 970, 162 S. E. 15.

Certainly the right of the accused to have the jury kept together is no more important than his right to a trial by a jury, which he may waive (Constitution, Section 8); or his constitutional right to a speedy trial, which was held to have been waived in *Butts* v. *Commonwealth,* 145 Va. 800, 133 S. E. 764; or his right to be represented by counsel, which was held to have been waived in *Watkins* v. *Commonwealth,* 174 Va. 518, 6 S. E. (2d) 670.

The precise question here involved has not been heretofore presented to this court. In *Barnes* v. *Commonwealth, supra,* it was held that a new trial should have been granted because of the separation of the jury, although the accused made no objection thereto. But in that case the accused was an ignorant colored woman who was not represented by counsel and was not in a position to know or appreciate her

rights. Moreover, no question of waiver was presented to or discussed by this court.

In *Robinson* v. *Commonwealth, supra,* the trial court overruled a motion for a new trial based on the ground that the members of the jury had not been kept together throughout the trial, but had been permitted to separate and return to their respective homes overnight. The record showed that this had been done at the suggestion of a number of the jurors and that there had been no objection on the part of the accused. It was urged before us, on behalf of the Commonwealth, that the failure of the accused to object at the time the separation was ordered or permitted constituted a waiver of his right to raise the question at a subsequent stage of the trial. We held that the accused's failure to object, under such circumstances, did not constitute a waiver of his right because if he had done so it would probably have prejudiced the jury against him. In other words, his implied consent to the separation of the jury was not voluntary but was obtained through a species of coercion or duress. To the same effect see *People* v. *Casino,* 295 Ill. 204, 129 N. E. 145, 34 A. L. R. 1102.

The facts in the case before us bear no similarity to those in the cases just cited. Here the accused was represented by intelligent and capable counsel. The colloquy which occured between them and the court showed that they were entirely cognizant of the rights of the accused to have the jury together. The agreement that the jury might separate overnight was entered into freely and voluntarily on the part of the accused, acting through his counsel. Indeed, as we have seen, it was suggested by him. There is no claim of duress or coercion on the part of either the court or the jury. Under such circumstances, we are of opinion that the accused waived the right to have the jury kept together throughout the trial.

It is true that we said in the *Owens Case, supra,* that "when it appears that there has been a separation of the jury, the burden is upon the Commonwealth to refute the presumption" of prejudice to the accused, which is suffi-

ciently broad to cover a case where the accused has consented to the separation as well as one in which he has not done so. But, as we have many times pointed out, the language in an opinion must be interpreted in the light of the facts which were before the court. In that case we were dealing with a situation in which the sheriff had permitted the jury to separate without the consent of the court, the accused, and the Commonwealth. Moreover, in that case we said that "whether or not there has been such a separation of the jury as will vitiate (the verdict) should be determined upon the facts appearing in the particular case."

Accordingly, we now hold that where, as here, the jury are permitted to separate by the court upon the express consent of the accused, and with the like consent of the Commonwealth's attorney, prejudice will not be presumed in favor of the accused, and the burden will be upon him to show that the jury, during such separation, were guilty of misconduct to his prejudice. This rule adequately protects the rights of both the accused and the Commonwealth. Where prejudice is shown the accused is assured of a new trial. On the other hand, where no prejudice is shown, the Commonwealth is spared the trouble and delay of a new trial based upon a mere technicality.

In the case before us there was no showing that the jury, or any member thereof, was guilty of any misconduct during the separation, or that the accused was in any way prejudiced thereby. In this situation we think the lower court correctly held that the accused, having voluntarily consented to a separation of the jury, was not entitled to a new trial because of it.

There is another reason why, in our opinion, the plaintiff in error is not entitled to prevail in this contention on the present appeal. Since, as we have seen, the sequestration of the jury was not a jurisdictional prerequisite to the validity of the verdict, but was merely an incident of the trial, the contention which the plaintiff in error here makes

should have been raised on the first appeal. It now comes too late.

The plaintiff in error next contends that since the verdict of the jury was recorded on December 21, 1939, the lower court was without authority, because of the lapse of time, to pronounce sentence on him on June 28, 1943. He relies upon *Butts* v. *Commonwealth, supra.* In that case there was a delay of thirty-three months between the rendition of the verdict and the final judgment, and the record disclosed no reason for the delay. We held that the withholding of the final judgment by the trial court, without reason or excuse therefor, was a violation of the accused's constitutional right to a speedy trial, and would have entitled him to his discharge from custody if he had asserted his right in an appropriate proceeding. But even there we held that his failure to assert his right to a discharge was a waiver thereof.

It is true that in the case at bar there was a delay of fifteen months between the date of the jury's verdict and the entry of the final judgment on March 15, 1941. But in the interim extended hearings were conducted to determine whether the accused was entitled to a new trial on the basis of after-discovered evidence. The refusal of the lower court to grant a new trial on this ground was one of the major assignments of error on the former appeal. *Powell* v. *Commonwealth, supra.*

When final judgment was entered on the verdict on March 15, 1941, the accused accepted this as valid, and, until the filing of the *habeas corpus* proceeding in the United States District Court, pointed out no valid reason why his detention should be held to be illegal. Clearly up to this time the plaintiff in error had waived his right to ask for a discharge. See *Butts* v. *Commonwealth, supra.*

As soon as the accused called the attention of the authorities to the fact that the former judgment, under which he had been sentenced, was void because he was not present when his motion for a new trial was overruled and the sen-

tence pronounced,* steps were taken for the entry of a valid judgment against him.

The authorities are unanimous in the view that a court may impose a valid sentence in substitution for one that is void, even though the execution of the void sentence has commenced.

As is said in 15 Am. Jur., Criminal Law, Sec. 477, p. 132: "If an illegal sentence had been pronounced, the court has power to substitute a legal sentence, and its right to do this is not impaired by the circumstance that the illegal sentence has been partly executed, though that circumstance will undoubtedly be considered by the court in determining the extent of the defendant's punishment. This may be done after the expiration of the term of court at which the void sentence was pronounced; the imposition of the void sentence does not terminate the jurisdiction of the court."

See also, Beale's Criminal Pleading and Practice, 1899 Ed., Sec. 321, pp. 363, 364; 24 C. J. S., Criminal Law, Sec. 1589, b, pp. 120, 121; *In re Bonner*, 151 U. S. 242, 14 S. Ct. 323, 38 L. Ed. 149; *Commonwealth* v. *Murphy*, 174 Mass. 369, 54 N. E. 860, 75 Am. St. Rep. 353, 48 L. R. A. 393, affirmed in 177 U. S. 155, 20 S. Ct. 639, 44 L. Ed. 711; *Breese* v. *United States*, 106 F. 680; *Bryant* v. *United States*, 130 C. C. A. 491, 214 F. 51; *Ex parte McCready*, 179 Cal. 514, 177 P. 459.

The invalidity of the judgment does not affect the validity of the verdict. Beale's Criminal Pleading and Practice, *supra;* *Ex parte Gunter*, 193 Ala. 486, 69 So. 442.

Needless to say, if the accused had raised on the former appeal the question of the invalidity of the first judgment

---

*That the presence of the accused was necessary to the validity of the judgment, see Code, section 4894; *Hooker* v. *Commonwealth*, 13 Gratt. (54 Va.) 763; *Bond* v. *Commonwealth*, 83 Va. 581, 3 S. E. 149.

That the right of a person indicted for a felony to be present at all stages of the trial is a constitutional right which he can not waive, see *Noell* v. *Commonwealth*, 135 Va. 600, 609, 115 S. E. 679, 30 A. L. R. 1345, and authorities there cited.

pronounced against him, the case would have been remanded for a proper sentence. See *Breese* v. *United States, supra; Ex parte Adams,* 187 Ala. 10, 65 So. 514, 515.

We find no error in the judgment complained of, and it is

*Affirmed.*